UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARON M. HARRISON, <br><br> Plaintiff, <br><br> v. <br><br> OFFICE OF THE ARCHITECT OF THE CAPITOL, <br><br> Defendant. | Civil Action No. 11-420 (CKK) |

MEMORANDUM OPINION
(October 9, 2013)

Plaintiff Sharon Harrison, an employee of Defendant the Office of the Architect of the Capitol, filed suit alleging the Defendant subjected the Plaintiff to a hostile work environment and retaliated against the Plaintiff for engaging in protected activity, in violation of the Congressional Accountability Act, 2 U.S.C. § 1301 *et seq.* Presently before the Court is the Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds no reasonable jury could conclude that the Defendant retaliated against the Plaintiff because of the Plaintiff's protected activity, or that the Defendant subjected the Plaintiff to a hostile work environment. Accordingly, the Defendant's motion is GRANTED.

**I. BACKGROUND**

  *A.* *Chain of Command*

---

[1] The Court's decision is based on the record as a whole, but the Court's analysis focused on the following documents, listed in chronological order of filing: Def.'s Mot to Dismiss or in the Alternative. for Summ. J. ("Def.'s Mot."), ECF No. [10]; Pl.'s Opp'n to Def.'s Mot. to Dismiss or in the Alternative for Summ. J., ECF No. [24]; Def.'s Reply in Support of Mot. to Dismiss or in the Alternative for Summ. J., ECF No. [21].

This action is the third of three lawsuits filed in this Court by the Plaintiff challenging various aspects of her employment with the Defendant. The Plaintiff has been employed in the Training and Employee Development Branch of the Human Capital Management Division of the Architect of the Capitol since 2001.[2] Def.'s Stmt. ¶ 1.[3] The Plaintiff is currently employed as a human resources specialist at the GS-12 level. *Id.* Between 2004 and September 2009, the Plaintiff reported to Stephen Hayleck, the Chief of the Training Branch. *Harrison v. Office of the Architect of the Capitol* ("*Harrison I*"), --- F. Supp. 2d ---, 2013 WL 4676110, at *1 (D.D.C. Sept. 1, 2013).

Following Mr. Hayleck's departure from the Defendant in September 2009, Laurie Drake and Amy Heslep rotated in the position of Acting Chief of the Training Branch. Def.'s Stmt. ¶ 2. The Chief of the Training Branch is the Plaintiff's first-line supervisor. *See Harrison I*, 2013 WL 4676110, at *1. Ms. Drake, at the time a Human Resources Specialist, worked for the Capitol Visitor Center, a division of the Architect of the Capitol. Drake Decl. ¶ 1. Ms. Heslep, also a Human Resources Specialist, worked in the Training Branch with the Plaintiff. Heslep Decl. ¶ 1. Ms. Heslep served as acting Chief for approximately six weeks in October and early November 2009. *Id.* ¶ 2. During this time, Ms. Heslep conferred with Ms. Drake regarding management of the Training Division. *Harrison v. Office of the Architect of the Capitol* ("*Harrison II*"), --- F. Supp. 2d ---, 2013 WL 5302666 at, *1 (D.D.C. Sept. 22, 2013). Ms. Drake became acting Chief in November 2009, and retained the position until March 2010.

---

[2] As the name and organizational structure of the Human Resources division where the Plaintiff is employed has changed over time, the Court shall employ the terminology the parties use in their briefs, as the Court has done in prior opinions.

[3] The Court shall refer to Defendant's Statement of Material Facts ("Defs.' Stmt."), ECF No. [10-2], or directly to the record.

Drake Decl. ¶ 2. Ms. Drake conferred with Ms. Heslep regarding management of the Training division during Ms. Drake's tenure as acting Chief. *Harrison II*, 2013 WL 5302666, at *1. Ms. Heslep then served as acting Chief for six additional weeks, from March until May 2010. Heslep Decl. ¶ 2. Thus, between October 2009 and May 2010, Ms. Heslep or Ms. Drake served as the Plaintiff's first-line supervisor.

   B. *Factual Background*

  The Court detailed the events preceding the Plaintiff's initial lawsuit in the *Harrison I* and *II* decisions. In short, following two "incidents" involving Mr. Hayleck in August and September 2008, the Plaintiff took extended leave from her position on September 30, 2008. *Harrison I*, 2013 WL 4676110, at *1-2. The Plaintiff returned to work on February 19, 2009, but was temporarily detailed to a different division within the Human Capital Management Division. *Id*. at *3. In May, the Plaintiff was informed that her temporary detail would end in June 2009. *Id.* At that time, the Plaintiff was reassigned to the Training Branch, but did not return to the physical office for the Training Branch. *Id.* Rather, the Plaintiff worked for the Training Branch from a private office in another part of the building. *Id.* Following Mr. Hayleck's departure in September 2009, the Plaintiff returned to the main Training Branch Office. *Id.*

  Preceding the Plaintiff's lawsuit in *Harrison II*, the Plaintiff submitted seven requests for counseling between February 6, 2009, and April 28, 2010, in order to commence proceedings pursuant to the Congressional Accountability Act against the Defendant for various alleged hostile work environment and retaliation claims. *Harrison II,* 2013 WL 5302666, at *2-4. During that period, on October 29, 2009, Ms. Heslep and another employee within the Training Branch searched the Plaintiff's coat pocket in the Plaintiff's absence and removed a digital recorder. *Id.* at *4-5. Since the Plaintiff destroyed the digital recorder during the proceedings in

*Harrison II*, the Court found the Defendant was entitled to an adverse inference that the Plaintiff was surreptitiously recording her co-workers. *Id.* at *11. Also during that period, on March 8, 2010, Ms. Drake issued a proposed reprimand to the Plaintiff regarding several instances in which the Plaintiff was delinquent in completing her work; however, the proposed reprimand was ultimately withdrawn. *Id.* at *6. In addition, on March 29, 2010, Ms. Heslep issued a "Performance Improvement Plan" or "PIP" for the Plaintiff due to deficiencies in her performance over the review period. *Id.* The Plaintiff took extended sick leave the day after the PIP was issued and, therefore, the PIP was withdrawn. *Id.* The PIP was never reinstated once the Plaintiff returned to work. *Id.* Finally, in early March 2010, Ms. Heslep and Ms. Drake approached the Information Security Division of the Architect of the Capitol in order to determine the protocol for obtaining authorized access to an employee's email "just in case there was an occasion for an extended absence or a period of time like that." *Id.* at *7. Someone subsequently sent an anonymous letter to the Plaintiff's home address, alleging that on March 3, 2010, Ms. Drake and Ms. Heslep inquired "how it would be possible to gain access to Sharon Harrison's (your) computer to see what she (you) is doing on it." *Id.*

The Plaintiff subsequently contacted the Office of the Inspector General ("OIG") about the anonymous letter and OIG conducted an investigation into the letter and its allegations. As part of the investigation, OIG interviewed Ms. Heslep regarding the March 3 conversation. *Id.*; Heslep Decl. ¶ 9. Ms. Heslep explained during the interview that she and Ms. Drake approached the Information Security Division because they suspected someone else was doing the Plaintiff's work, but after speaking with the Division decided not to pursue the issue unless there was another incident that led the supervisors to believe someone else was completing the Plaintiff's work. *Id.*

The Plaintiff again took extended sick leave on March 30, 2010. *Id.* In early April, Ms. Heslep submitted a written request for access to the Plaintiff's email in order to complete certain training requests that were outstanding when the Plaintiff left on sick leave. *Id.* The request was approved and Ms. Heslep was provided access to the Plaintiff's Outlook email. *Id.*

The event forming the foundation of the Plaintiff's current complaint occurred several weeks after the Plaintiff returned to work on June 22, 2010, when the Plaintiff contacted the OIG via email to inquire about the status of the OIG's investigation of her complaints. Def.'s Stmt. ¶ 11-12. Senior Agent James Wilson of the OIG responded to the Plaintiff by email and informed the Plaintiff that the investigation was "still ongoing." *Id.* at ¶ 13. Agent Wilson copied the Plaintiff's supervisor, Ms. Heslep, in his reply email to the Plaintiff although Ms. Heslep had not initially been included in the email exchange. *Id.* Included in Agent Wilson's July 6, 2010, email were previous email exchanges between OIG and the Plaintiff in which an OIG agent requested to "come by and get the original letter and envelope" that the Plaintiff received. Pl.'s Ex. 22-2 (Copy of Email Ex. 2).

C.  District Court Proceedings

The Plaintiff filed the complaint in *Harrison I* on July 23, 2009, alleging the Defendant subjected the Plaintiff to a hostile work environment based on her gender, her opposition to violations of the Occupational Safety and Health Act of 1970, her exercise of rights under the Family and Medical Leave Act, and in retaliation for protected activity. Following discovery, the Court granted summary judgment in favor of the Defendant on all counts. *See generally Harrison I*, 2013 WL 4676110. The Plaintiff filed the complaint in *Harrison II* on August 31, 2010, alleging the Defendant unlawfully retaliated against the Plaintiff for the Plaintiff's protected activities under the Congressional Accountability Act. Specifically, the complaint

5

alleged that the search of the Plaintiff's coat; the Defendant's violation of Procedural Rule 2.03(m) when processing one of the Plaintiff's Requests for Counseling; the March 8, 2010, proposed reprimand; the issuance of the March 29, 2010, Performance Improvement Plan; and the March 3, 2010, inquiry by Ms. Drake and Ms. Heslep regarding the protocol for accessing the Plaintiff's email each constituted unlawful retaliation for the Plaintiff's protected activities. The complaint also alleged the Defendant subjected the Plaintiff to a retaliatory hostile work environment. Following discovery, the Court granted summary judgment in favor of the Defendant on all counts. *See generally Harrison II*, 2013 WL 5302666.

The Plaintiff filed the present action on April 26, 2011. The Complaint sets forth three claims. Count I alleges that the July 6, 2010, email sent by OIG Agent Wilson to the Plaintiff in which Plaintiff's supervisor, Ms. Heslep, was copied was unlawful retaliation for the Plaintiff's protected activities under the Congressional Accountability Act. *Id.* ¶¶ 66-71. Count II asserts that the July 6, 2010, email "foreclosed and deprived Plaintiff of the use of the Office of the Inspector General" and was unlawful retaliation for the Plaintiff's protected activities. *Id.* ¶¶ 72-77. As Count II only enumerates a specific adverse effect of the alleged retaliation and is otherwise based on the identical factual predicate and cause of action as Count I, the Court is unable to distinguish the two counts and, accordingly, treats the counts as one retaliation claim. Finally, in Count III of the Complaint, the Plaintiff alleges the Defendant subjected her to a retaliatory hostile work environment. *Id.* ¶¶ 78-82.

## II. LEGAL STANDARD

Although styled in the alternative as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant's motion turns upon consideration of materials, notably declarations, that are outside the scope of the pleadings. Both

parties effectively treat the motion as one for summary judgment. Indeed, the Plaintiff relies on materials that are outside the scope of the pleadings in her Opposition. Accordingly, the Court shall treat the motion solely as one for summary judgment.

Furthermore, although the Plaintiff filed a Motion for Relief Pursuant to Federal Rule of Civil Procedure 56(f),[4] the Court denied the Motion on the basis that it did not identify the discovery the Plaintiff wanted with any measure of specificity, nor did it articulate a plan for obtaining the discovery or explain why the discovery would be essential to justify the Plaintiff's opposition. Therefore, the Court reaches the merits of the Defendant's Motion for Summary Judgment even though the parties did not engage in discovery.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials); or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). When considering a motion for summary judgment, the court may not make credibility determinations

---

[4] Rule 56(d) was formerly designated as Rule 56(f).

or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Liberty Lobby*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* For a dispute about a material fact to be "genuine," there must be sufficient admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Id.* The adverse party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute. *See Ass'n of Flight Attendants–CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009).

### III. DISCUSSION

*A.     Count I & II: Retaliation Claim*

The Congressional Accountability Act of 1995 extended the protections of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to employees of the legislative branch. 2 U.S.C. § 1302(a)(2). The Act also contains its own anti-retaliation provision making it

> unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this chapter, or because the covered

8

> employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this chapter.

*Id.* § 1317(a). Claims arising under this provision are analyzed under the same framework as Title VII retaliation cases. *Timmons v. U.S. Capitol Police Bd.,* 407 F. Supp. 2d 8, 11 (D.D.C. 2005); *Herbert v. Architect of the Capitol*, 766 F. Supp. 2d 59, 74 n.13 (D.D.C. 2011); *Turner v. U.S. Capitol Police Bd.,* --- F. Supp. 2d ---, 2013 WL 5428771, at *4 (D.D.C. Sept. 30, 2013). Thus, retaliation claims based on circumstantial evidence, like the Plaintiffs' claims, trigger the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). Under this framework, "a plaintiff must first establish a prima facie case of retaliation by showing (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Id.* "If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its actions." *Id.* If the employer proffers a non-discriminatory explanation for the conduct at issue, the burden-shifting framework "disappears," and the Court "looks to whether a reasonable jury could infer . . . retaliation from all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence of retaliation." *Id.* (citation omitted).

The Plaintiff's retaliation claim rests solely on OIG Agent Wilson's act of copying the Plaintiff's supervisor, Ms. Heslep, in his reply to the Plaintiff's email inquiring about the status of OIG's investigation into her complaints. The Defendant does not dispute that the Plaintiff engaged in protected activity for purposes of the Congressional Accountability Act. The dispute between the parties rests primarily on whether the action at issue was materially adverse.

Materially adverse action would dissuade[] a reasonable worker from making or

> supporting a charge of discrimination. Typically, a materially adverse action in the workplace involves a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits. Such actions demonstrate an objectively tangible harm.

*Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (citations omitted). While the Plaintiff in her complaint makes the conclusory assertion that Agent Wilson's July 6, 2010, email "foreclosed and deprived" her "of use of the Office of Inspector General," the facts, viewed in the light most favorable to the Plaintiff, fall short of the material adversity standard. According to Ms. Heslep's declaration, on April 8, 2010 – approximately three months prior to receiving Agent Wilson's email – Ms. Heslep was informed by the OIG of the allegations the Plaintiff had made against her with respect to her March 3, 2010, request to access the Plaintiff's email account. Heslep Decl. ¶ 9. Ms. Heslep was also interviewed by the OIG on that date about the nature of her March 3, 2010, request. *Id.* Consequently, Ms. Heslep already knew of the Plaintiff's role in the OIG investigation when she received Agent Wilson's July 6, 2010, email. In copying Ms. Heslep in his reply to the Plaintiff's July 6, 2010, email, Agent Wilson did not provide Ms. Heslep or any other party any information of which they were not already informed. Contrary to the Plaintiff's claim, the extended email exchange included in Agent Wilson's July 6, 2010, email did not provide information about the unidentified witness to Ms. Heslep's email request or the anonymous letter the Plaintiff received about the request. *See* Pl.'s Ex. 22-2 (Copy of Email Ex. 2). The email exchange only included a vague request by an OIG agent to "come by and get the original letter and envelope you received." *Id.* In any event, Agent Wilson's July 6, 2010, email did not provide any information other than what a reasonable employee could have assumed would be provided to the person implicated in her complaint of misconduct. This is especially true given the Plaintiff did not submit a general complaint, but a specific complaint

alleging that her supervisor requested access to her specific email account. A reasonable employee could have predicted that, as the target of such a complaint, the employee's supervisor would be informed about the nature of the complaint and the specific party involved.

Moreover, the Plaintiff does not allege that OIG stopped its investigation of her complaint or refused to investigate any other claims she has made. Indeed, the OIG continued its investigation and issued a formal Report of Investigation on September 2, 2010. *See* Pl.'s Ex. 6 (Office of Inspector General, Architect of the Capitol, Report of Investigation, OIG-I-10-05) at 1. The Plaintiff also does not allege that Ms. Heslep or any other supervisor took any action against her since finding out about the complaint from Agent Wilson's July 6, 2010 email. Accordingly, as no reasonable employee would find the email materially adverse as a matter of law, the Defendant is entitled to Summary Judgment on Count I/II.

   B.   *Count III: Retaliatory Hostile Work Environment Claim*

The Plaintiff alleges in Count III that the events at issue in *Harrison I* and *II* and Count I/II constituted a retaliatory hostile work environment. In this circuit, a hostile work environment may amount to retaliation under Title VII. *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006). When the alleged harasser is the employee's supervisor, the employer is vicariously liable to the employee. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).[5] To establish a prima facie Title VII hostile work environment claim, the Plaintiff must show: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the

---

[5] However, "[w]hen no tangible employment action is taken," the employer may raise an affirmative defense comprised of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

harassment occurred because of her protected status; and (4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment. *See Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122-23 (D.C. Cir. 2002); *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999). The fourth element is the focus of the Defendant's motion for summary judgment.

A workplace becomes "hostile" for purposes of Title VII only if the allegedly offensive conduct "permeate[s] [the workplace] with discriminatory [or retaliatory] intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993) (citation omitted). This standard has both objective and subjective components: the work environment must be one that a reasonable person in the plaintiff's position would find hostile or abusive, and the plaintiff must actually perceive the environment to be hostile or abusive. *Id*. The objective prong requires the Court to evaluate the "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher*, 524 U.S. at 787–88). "[A] few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).

The Plaintiff argues the events at issue in *Harrison I* and *II* and discussed in Count I/II constituted a retaliatory hostile work environment. The Court granted summary judgment in favor of the Defendant in *Harrison I* in relevant part because the Plaintiff failed to produce any evidence that the events at issue were motivated by a retaliatory animus. *Harrison I*, 2013 WL 4666110, at \*5-8. In *Harrison II*, the Court granted summary judgment in favor of the

Defendant in part because the Plaintiff failed to produce sufficient evidence that the search of the Plaintiff's coat or issuance of the performance improvement plan were motivated by retaliatory animus. *Harrison II*, 2013 WL 5302666, at \*16. In addition, the Court held that no reasonable juror could conclude the Plaintiff's re-assignment to the Training Branch; the Plaintiff being instructed not to bring a recording device to work when (per the adverse inference) she was surreptitiously recording her co-workers; the minor technical violation of Procedural Rule 2.03(m) when processing one of the Plaintiff's Requests for Counseling; the withdrawn proposal to reprimand the Plaintiff; and the inquiry by Ms. Heslep and Ms. Drake as to the procedure for obtaining access to the Plaintiff's computer, even when considered as a whole, was sufficiently severe or pervasive such that it altered the conditions of the Plaintiff's employment and created an abusive working environment. *Id.* at \*17. The addition of Agent Wilson's July 6, 2010, email does not turn this string of sporadic events, spread out over time, and involving five separate supervisors and a different division of the Defendant into a hostile work environment. As discussed above, Agent Wilson's email did not objectively and tangibly alter the Plaintiff's employment because the email did not reveal any information to Ms. Heslep about the Plaintiff's complaint to the OIG that Ms. Heslep did not already know from having been interviewed as part of OIG's investigation into the Plaintiff's complaints. Moreover, a reasonable employee would expect her identity and role in a complaint – especially a complaint alleging that a supervisor had requested to search a specific employee's email – would be revealed to the target of the complaint as part of the complaint's investigation.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Defendant is entitled to summary judgment on all counts. The Plaintiff failed to proffer sufficient evidence from which a reasonably jury

13

could conclude that OIG Agent Wilson's act of copying the Plaintiff's supervisor, Ms. Heslep, in his reply to the Plaintiff's email inquiring about the status of OIG's investigation into her complaint was a materially adverse action for purposes of a retaliation claim. Furthermore, no reasonable jury could conclude that the purportedly hostile actions, viewed as a whole, were sufficiently severe or pervasive so as to create a hostile work environment. Accordingly, the Defendant's [10] Motion for Summary Judgment is GRANTED.

An appropriate Order accompanies this Memorandum Opinion.

                                                /s/
                                       **COLLEEN KOLLAR-KOTELLY**
                                       UNITED STATES DISTRICT JUDGE