# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SHARON M. HARRISON,

    Plaintiff,

       v.

OFFICE OF THE ARCHITECT OF THE
CAPITOL,

    Defendant.

Civil Action No. 11-420 (CKK)

## REDACTED MEMORANDUM OPINION
(September 23, 2014)

Presently before the Court is Plaintiff's [31] Motion for Reconsideration of the Court's [29] Order, granting Defendant's Motion for Summary Judgment, and accompanying [30] Memorandum Opinion. Plaintiff argues that: (1) the Court erred by applying case law related to Title VII claims to the instant action brought under the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301 *et seq.*; and (2) the Court erred in granting summary judgment for Defendant on Plaintiff's retaliatory hostile work environment claim given the incidents cited by Plaintiff in the instant matter and in the two earlier cases filed by Plaintiff against Defendant. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court INCORPORATES as part of this opinion its reasoning as laid out in its [30] Memorandum Opinion, *see* 985 F. Supp. 2d 13 (D.D.C. 2013), and DENIES Plaintiff's motion for reconsideration for the foregoing reasons.

---

[1] The Court's decision is based on the record as a whole, but the Court's analysis focused on the following documents, listed in chronological order of filing: Pl.'s Mot. for Reconsideration ("Pl.'s Mot."), ECF No. [31]; Def.'s Memo. in Opp'n to Pl.'s Mot. for Reconsideration ("Def.'s Opp'n"), ECF No. [32]; Pl.'s Reply Mem. in Supp. of her Mot. for Reconsideration ("Pl.'s Reply"), ECF No. [34].

# I.    BACKGROUND

The Court has detailed the underlying facts of this Motion in its previous opinion.  *See Harrison v. Office of the Architect of the Capitol*, 985 F. Supp. 2d 13, 15-18 (D.D.C. 2013).   The instant matter is based on an event that occurred on July 6, 2010 related to an email sent by Senior Agent James Wilson of the Office of the Inspector General to Plaintiff.

During all pertinent times, Plaintiff, Sharon Harrison, was employed by Defendant, the Architect of the Capitol.  This action is the third of three lawsuits filed in this Court by the Plaintiff challenging various aspects of her employment with the Defendant.  On July 23, 2009, Plaintiff filed her first action ("*Harrison I*") against Defendant, alleging that Defendant unlawfully discriminated against her in violation of 2 U.S.C. § 1311(a)(1), and unlawfully retaliated against her in violation of 2 U.S.C. § 1317(a).  *See* Civ. No. 09-1364 (CKK) ("*Harrison I*").  On August 31, 2010, Plaintiff filed a subsequent action ("*Harrison II*") against Defendant, alleging that Defendant unlawfully retaliated against her in violation of 2 U.S.C. § 1317(a).  *See* Civ. No. 10-1480 (CKK) ("*Harrison II*").  On February 23, 2011, Plaintiff filed the instant action ("*Harrison III*") against Defendant, alleging that Defendant unlawfully retaliated against her in violation of 2 U.S.C. § 1317(a).  By separate orders, the Court granted summary judgment in favor of Defendant in each of the three actions.  *See Harrison I*, 964 F. Supp. 2d 71 (D.D.C. 2013); *Harrison II*, 964 F. Supp. 2d 81 (D.D.C. 2013); *Harrison III*, 985 F. Supp. 2d 13 (D.D.C. 2013).

In the instant action, the Court granted summary judgment in favor of Defendant on all three Counts of Plaintiff's Complaint as follows: (a) unlawful retaliation for Plaintiff's protected

activities in violation of the CAA based on the July 6, 2010 incident (Counts I & II);[2] and (b) and imposition of a retaliatory hostile work environment against Plaintiff (Count III). *See generally Harrison III*, 985 F. Supp. 2d 13 (D.D.C. 2013).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a party to file "[a] motion to alter or amend a judgment" within "28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).  Motions under Rule 59(e) are "disfavored" and the moving party bears the burden of establishing "extraordinary circumstances" warranting relief from a final judgment. *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).  Rule 59(e) motions are "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted).  Rule 59(e) does not provide a vehicle "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995)).

## III.    DISCUSSION

Plaintiff raises two objections to the Court's granting of summary judgment in favor of Defendant in the instant matter.  First, Plaintiff alleges that the Court erred by applying case law related to Title VII claims to the instant action brought under the CAA.  Second, Plaintiff argues that the Court erred in concluding that events cited by Plaintiff in *Harrison I*, *II*, and *III* were too

---

[2] As the Court noted in its decision, it analyzed Counts I and II together because both claims arose from the same incident and the Court was unable to distinguish the two counts. *See Harrison III*, 985 F. Supp. 2d at 18.

sporadic in nature to compose an actionable hostile work environment claim, particularly in light of the fact that the employees involved in many of the incidents had the same supervisor.  The Court shall address each argument in turn.

**A.  *Protection Provided Against Discrimination & Retaliation Under the CAA***

Plaintiff argues that the Court erred by applying case law related to the antidiscrimination and antiretaliation provisions of Title VII to the instant action because the CAA provides broader protection against discrimination and retaliation.  Pl.'s Mot. at 5-10.  Plaintiff roots her argument in two sources: (1) the text of the CAA and Title VII; and (2) decisions of the Office of Compliance Board ("Board") related to CAA claims.  *Id.*  In contrast, Defendant argues that the Court's application of case law related to Title VII was appropriate because: (1) both the text of the statutes and precedent in this jurisdiction support the finding that the CAA incorporates Title VII and its underlying body of law; and (2) decisions by the Board are not binding on this Court. Def.'s Opp'n at 3-5.  The Court finds that it did not err by applying Title VII precedents to the instant action for the reasons described herein.

Turning to Plaintiff's first argument, Plaintiff asserts that the statutory language itself justifies different standards for claims brought under the CAA and those brought under Title VII. Plaintiff argues that the statutory language of the CAA's antidiscrimination provision demonstrates that the protection is broader than that encompassed by Title VII.  The relevant portion of the CAA provides: "All personnel actions affecting covered employees shall be made free from any discrimination based on . . .  race, color, religion, sex, or national origin, within the meaning of section 703 of the Civil Rights Act of 1964 [Title VII]."  2 U.S.C. § 1311(a)(1). Title VII's antidiscrimination provision provides:

It shall be an unlawful employment practice for an employer . . . to fail or refuse

4

> to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or . . . to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). Plaintiff argues that the reference in the CAA to "all personnel actions" covers a broader range of potential employment actions than Title VII which only provides relief from specific types of employment actions. Pl.'s Mot. at 7.

Plaintiff similarly argues that the antiretaliation provision of the CAA is broader than the analogous provision in Title VII. With regards to retaliation, the CAA provides:

> It shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this Act, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this Act.

2 U.S.C. § 1317(a). Title VII also provides protection against retaliation, stating:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title [Title VII] [], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [Title VII] [].

42 U.S.C. § 2000e-3. Plaintiff argues that the inclusion of the word "intimidate" demonstrates that the antiretaliation provision, like the antidiscrimination provision, of the CAA covers a broader range of employer activity. Pl.'s Mot. at 7-9. Defendant argues that the CAA explicitly applied eleven employment and workplace laws, including Title VII, to the legislative branch of

5

the federal government and, thus, the case law interpreting Title VII is appropriately applied to actions brought under the CAA. Def.'s Opp'n at 3.

The Court finds Plaintiff's argument related to the statutory language unpersuasive. In *Newton v. Office of the Architect of the Capitol*, Judge Royce C. Lamberth held that Title VII case law applied to discrimination and retaliation claims brought under the CAA. 905 F. Supp. 2d 88 (D.D.C. 2012), *aff'd* No. 12-5145, 2012 WL 660367 (D.C. Cir. Dec. 6, 2012). In a detailed analysis, Judge Lamberth found that neither precedent in this jurisdiction nor statutory interpretation supported the plaintiff's claim that judicial interpretations of Title VII discrimination and retaliation claims were inappropriately applied to actions brought under the CAA. *Id.* at 92-93. Indeed, contrary to Plaintiff's argument, courts in this jurisdiction consistently have read the CAA to incorporate Title VII as well as other remedial federal statutes and, thus, have applied case law related to underlying remedial federal statutes, such as Title VII, in analyzing claims brought under both the antidiscrimination and antiretaliation provisions of the CAA. *See, e.g., Blackmon-Malloy v. United States Capitol Police Bd.*, 575 F.3d 699, 706 (D.C. Cir. 2009) (noting that "[t]he CAA incorporates much of Title VII's substantive law, but it establishes its own comprehensive administrative regime – including jurisdictional provisions"); *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 492 (D.C. Cir. 2008) (noting that Title VII applies to offices of the legislative branch through the CAA and applying Title VII analysis to the plaintiff's discrimination claims); *Anyaso v. United States Capitol Police*, Civ. No. 12-1327, 2014 WL 1501242, at *4, *8 (D.D.C. Apr. 7, 2014) (finding that courts analyze both discrimination and retaliation claims brought under the CAA using the same standards as claims brought under Title VII); *Gordon v. Office of the Architect of the Capitol*, 928 F. Supp. 2d 196, 206 (D.D.C. 2013) (holding that discrimination claims brought under the CAA are analyzed

under the *McDonnell Douglas* framework); *Joyce v. Office of the Architect of the Capitol*, 966 F. Supp. 2d 15, 22 (D.D.C. 2013) ("In substance, . . . the Congressional Accountability Act expressly incorporates protections and remedies from the generally applicable federal antidiscrimination statutes . . . . Though retaliation under the CAA has no explicit tie to other statutes, . . . both parties agree — following D.C. Circuit *dicta* and district court holdings — that the framework for Title VII retaliation applies."); *Moran v. United States Capitol Police Bd.*, 887 F. Supp. 2d 23, 30 (D.D.C. 2012) ("Although the CAA contains its own retaliation provision, courts refer to the body of case law regarding discrimination under Title VII to evaluate claims of retaliation under the CAA."). Indeed, this Court addressed this issue in an earlier ruling and noted that, "[c]laims brought under the CAA are analyzed under Title VII's familiar framework and standards . . . . [and] [a]lthough the CAA includes its own anti-retaliation provision, *see* 2 U.S.C. § 1317(a), courts routinely rely upon Title VII case law when evaluating whether a challenged employment action is sufficiently adverse under the CAA's anti-retaliation provision." *Herbert v. Architect of the Capitol*, 839 F. Supp. 2d 284, 291 n.2 (D.D.C. 2012) (internal citations omitted). Accordingly, the Court finds that Title VII analyses are properly applied to claims related to Title VII but brought through the CAA pursuant to the case law in this jurisdiction.

Turning to Plaintiff's second argument that this Court should follow the Board's interpretations of the antiretaliation provision of the CAA, the Court similarly finds that this argument is not persuasive. As the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") explained, "Congress extended the protections of Title VII of the Civil Rights Act of 1964, as well as ten other remedial federal statutes, to employees of the legislative branch" through the CAA. *Blackmon-Malloy v. United States Capitol Police Bd.*, 575 F.3d 699,

701 (D.C. Cir. 2009); *see also* 2 U.S.C. § 1302(a) ("The following laws shall apply, as prescribed by this Act, to the legislative branch of the Federal Government . . . Title VII of the Civil Rights Act of 1964 . . . ."). The D.C. Circuit noted that the CAA sets up a three-step internal process, including counseling and mediation, for an aggrieved employee to follow. Upon completion of the three-step process, an employee may file a complaint either with the Office of Compliance Board or in district court. *Id.* at 701-02. However, as another judge in this district noted, Board decisions are not final because they are appealable to the Federal Circuit, making both complaints brought with the Office of Compliance and in district court ultimately subject to judicial review. *Newton v. Office of the Architect of the Capitol*, 905 F. Supp. 2d 88, 92 (D.D.C. 2012). Accordingly, the CAA "suggests judicial, not Board, primacy by providing that courts, rather than the Board, shall (if necessary) have the final word on all complaints." *Id.* at 92-93.

Plaintiff points to two Board decisions supporting her argument that the antiretaliation provision of the CAA should be read more broadly than that of Title VII. Pl.'s Mot. at 7-9 (citing *Solomon v. Office of the Architect of the Capitol*, Case No. 02-AC-62 (RP) (Office of Compliance Dec. 7, 2005) (Decision of Bd. of Dir.), http://www.compliance.gov/wp-content/uploads/2010/03/solomon_12-07-05.pdf; *Britton v. Office of the Architect of the Capitol*, Case No. 08-AC-20 (CV, RP) (Office of Compliance May 23, 2005) (Decision of Bd. of Dir.), http://www.compliance.gov/wp-content/uploads/2010/03/britton_05-23-05.pdf). Contrary to Plaintiff's assertion that the CAA provides broader protection than Title VII, in *Britton v. Office of the Architect of the Capitol*, a case cited approvingly by Plaintiff, the Board found that a Title VII-based approach to claims brought under the CAA was appropriate. *Britton*, Case No. 08-AC-20 (CV, RP), at 7. Accordingly, the cited Board opinion supports, rather than refutes that

appropriateness of applying Title VII standards to actions brought under the CAA. The Board in *Britton* considered the varying approaches to Title VII adopted by different circuits to determine what employment actions should be actionable under the CAA. Ultimately, the Board rejected the D.C. Circuit's approach and adopted the broader approach of other circuits, including the Ninth Circuit. *Id.* at 7-9. As a result, the Board found actionable under the CAA "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter a charging party or others from engaging in protected activity." *Id.* at 8 (quoting *Ray v. Henderson*, 217 F.3d 1234, 1240-43 (9th Cir. 2000)). However, given the "judicial primacy" embodied in the CAA, the Court is unpersuaded that it should follow the Board's adoption of the Ninth Circuit's interpretation of Title VII over binding precedent interpreting Title VII. Notably, there is no Federal Circuit opinion that adopts the Board's approach.[3] Most importantly, after the cited Board decisions, the Supreme Court of the United States expressly adopted the D.C. Circuit's interpretation of the antiretaliation provision of Title VII over those employed by other circuits, including the one adopted by the Board, in *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). *Id.* at 67-68. Indeed, the Supreme Court held: "In our view, plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting

---

[3] Plaintiff cites to one Federal Circuit opinion in her reply, *Duncan v. Office of the Architect*, 541 F.3d 1377 (Fed. Cir. 2008). Pl.'s Reply at 6. In *Duncan*, the Federal Circuit held that the plaintiff could bring an OSHA-related retaliation claim before the Board through the CAA. *Id.* at 1380. However, the Federal Circuit in *Duncan* did not adopt the Board's standard for a retaliation claim under the CAA. Rather, the court noted that the Board applied the "reasonably likely" standard, *id.* at 1379, but ultimately the court upheld the Board's ruling in favor of the defendant because the plaintiff failed to meet the causation requirement of his claim. *Id.* at 1380.

a charge of discrimination." *Id.* at 68 (internal quotations omitted).[4]  Therefore, the Board decisions Plaintiff cites rely on Title VII precedent that has been overruled by the Supreme Court.

Accordingly, the Court is not persuaded that either the language of the CAA itself or the decisions handed down by the Office of Compliance Board require the Court to reconsider its earlier ruling.  Rather, relying on the body of case law in this jurisdiction and Supreme Court precedent, the Court concludes that it did not err in applying precedents from Title VII to Plaintiff's claims in the instant action and, thus, Plaintiff's request for reconsideration on this issue is denied.

## B.  *Hostile Work Environment Claim*

The claims in the instant action center around an email sent by Senior Agent James Wilson of the Office of the Inspector General ("OIG") on July 6, 2010.  OIG was conducting an investigation in response to Plaintiff informing the office that she received an anonymous letter indicating that Laurie Drake and Amy Heslep, two employees who rotated as Acting Chief of Plaintiff's branch, had inquired about the protocol for obtaining access to Plaintiff's email account.  *Harrison III*, 985 F. Supp. 2d 13, 17-18 (D.D.C. 2013).  Plaintiff sent an email to Agent Wilson on June 22, 2010, inquiring about the status of the investigation.  Agent Wilson replied to Plaintiff's email on July 6, 2010, indicating that the investigation was ongoing and copying Ms. Heslep on the email exchange.  An earlier email in the exchange, now available to Ms. Heslep by virtue of being copied on Agent Wilson's response, indicated that Plaintiff should

---

[4] The Court further notes that Plaintiff cited the Supreme Court's opinion in *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006), approvingly throughout its opposition to Defendant's Motion for Summary Judgment.  *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 31-32, 37-39 & 42, ECF No. [24].

"come by [OIG] and get the original letter and envelope" that the Plaintiff received. *Id.* Plaintiff argues that this incident coupled with the incidents cited in *Harrison I* and *II* form the basis of an actionable hostile work environment claim.[5] *Id.* at 18-22. Ultimately, the Court held that "no reasonable jury could conclude that the purportedly hostile actions, viewed as a whole, were sufficiently severe or pervasive so as to create a hostile work environment." *Id.* at 23. Plaintiff argues that Court erred in reaching this holding for two reasons. First, Plaintiff argues that the Court erred by not considering the evidence in *Harrison I*, *II*, and *III* as a whole in reaching its decision.[6] Second, Plaintiff argues that the Court did not consider that the events are linked together by a common thread that is Chief Administrative Officer David Ferguson whom Plaintiff contends was personally involved in the cited incidents or was the supervisor of many of the other employees involved in the various cited incidents.[7] In this regard, the Court finds that it will analyze a specific incident that should have been considered as part of Plaintiff's hostile work environment claim and, thus, will reconsider Plaintiff's hostile work environment including this additional incident. However, the Court will not chnage its holding based on Mr. Ferguson's alleged involvement in the cited incidents.

---

[5] The Court also granted summary judgment in favor of Defendant on Plaintiff's discrete retaliation claim, holding that a reasonable juror could not conclude that an email sent by Agent Wilson on July 6, 2010, was materially adverse as a matter of law. *Harrison III*, 985 F. Supp. 2d 13, 21 (D.D.C. 2013). Plaintiff does not raise any specific objection to this holding in her motion and, accordingly, the Court shall only discuss its holding as to the hostile work environment claim.

[6] The Court notes that this is contrary to the argument that Plaintiff raised in her opposition to the motion for summary judgment. In her opposition, Plaintiff notes that the parties rejected the consolidation of the instant action and *Harrison II*. Pl.'s Opp'n to Mot. for Summ. J., at 20, ECF No. [17]. Further, Plaintiff argues that Defendant "unnecessarily conflates in part the subject matter of Plaintiff's second Complaint, *Harrison II*, with the subject matter of the instant Complaint, '*Harrison III*.'" *Id.*

[7] Defendant's reply to Plaintiff's opposition is of little value with regard to the Court's analysis in this section as the reply does not directly address either of these arguments.

1. <u>Incidents cited in Harrison I, II, and III</u>

Turning to Plaintiff's first argument, Plaintiff provides a list of events that formed the bases of *Harrison I*, *II*, and *III* that she argues demonstrate a "systematic, non-sporadic hostile work environment." *See* Pl.'s Mot. at 3-4. The Court finds that some of these events are properly put forth as evidence of a hostile work environment but others are not properly part of Plaintiff's hostile work environment claim.[8] The Court finds that it did not fully analyze a specific incident (22 emails re: job postings) that should be considered as part of Plaintiff's hostile work environment claim.[9] The Court first will consider the events properly before it as evidence of Plaintiff's hostile work environment claim.

The Court first notes that the impetus of *Harrison I* and the subsequent actions is an incident that occurred on August 6, 2008, between Plaintiff and her supervisor at the time, Stephen Hayleck, which shall not be considered in this analysis of Plaintiff's hostile work environment claim for the reasons described *infra*. *See Harrison I*, 964 F. Supp. 2d 71, 74 (D.D.C. 2013). While Plaintiff was on leave from the office between September 30, 2008 to February 19, 2009, she made a request to Rebecca Tiscione, the Director of Human Resources, that she be given a six-month temporary assignment outside of the Training Division and, thus, outside of Mr. Hayleck's chain of command. *Id.* at 75. Upon her return on February 19, 2009 through June 17, 2009, Plaintiff was temporarily assigned to the Human Resources Division and the Human Capital Management Division where she did not report to Mr. Hayleck. *Id.*;

_____

[8] While the Court ultimately shall address all incidents cited by Plaintiff in this section, the Court shall not address them in the same order as presented by Plaintiff in her motion.

[9] The Court did not reconsider its holding in *Harrison II* based on the 22 emails because the emails were not referenced in the complaint. *See generally* Compl., Civ. No. 10-1480, ECF No. [1]. The Court shall consider the emails in this analysis because they were described in the complaint in the instant matter. Compl. ¶¶ 21-28.

*Harrison II*, 964 F. Supp. 2d 81, 86 (D.D.C. 2013). Plaintiff was reassigned back to the Training Branch on June 22, 2009, and again was placed in Mr. Hayleck's chain of command until September 2009, when Mr. Hayleck resigned from employment with Defendant. *Harrison I*, 964 F. Supp. 2d at 75-76; *Harrison II*, 964 F. Supp. 2d at 85. However, during that time, Plaintiff did not return to the physical office of the Training Branch in the basement of the Ford Office Building and instead, worked from the second floor of the same building. *Harrison I*, 964 F. Supp. 2d at 76; *Harrison II*, 964 F. Supp. 2d at 85. Plaintiff objected to being transferred back to the Training Branch in June 2009. *See Harrison II*, 964 F. Supp. 2d at 87. Further, while on her temporary assignment, between February 19, 2009 and May 14, 2009, Plaintiff received a total of 22 anonymous emails regarding job opportunities outside of the Office of the Architect of the Capitol [REDACTED – OIG REPORT]. *Harrison I*, 964 F. Supp. 2d at 75-76; Def.'s Stmt. of Mat. Facts ¶ 3 (citing Compl. ¶¶ 21-28), ECF No. [12]); [REDACTED – OIG REPORT].

On October 23, 2009, Ms. Heslep and another employee, Kristy Miller, who shared office space with Plaintiff, found a digital recorder in Plaintiff's coat pocket. *Harrison II*, 964 F. Supp. 2d at 89. As a result, on the following day, October 30, 2009, Plaintiff was instructed by Dan Cassil, Deputy Chief Administrative Officer, and Teresa Bailey, Chief Human Capital Officer, that she was not allowed to bring a digital recorder with her to work. *Id.* Per adverse inference imposed as a sanction in *Harrison II*, one of the reasons that Plaintiff was bringing the digital recorder to work was to intentionally tape conversations between her co-workers without their consent.[10] *Id.* at 95. Around the same time period, in late October or early November 2009, the

---

[10] As the Court noted in *Harrison II*, Plaintiff, who destroyed the recording device in question after it was requested through discovery, produced a recording of a conversation

Equal Employment Opportunity and Conciliation Programs Division of the Architect of the Capitol ("EEO/CP") issued a final decision related to one of Plaintiff's requests for counseling that violated Procedural Rule for the Office of Compliance for the Architect of the Capitol 2.03(m). *Id.* at 87-88. Specifically, the EEO/CP issued the final decision regarding the grievance procedures from the Executive Director rather than the Architect of the Capitol, and did not send a formal notice of the decision to the Office of Compliance. *Id.* at 97, 101.

Next, in early March 2010, Ms. Heslep and Ms. Drake, who rotated as Acting Chief of Plaintiff's Branch after Mr. Hayleck's departure, asked the Information Security Division the protocol for obtaining access to Plaintiff's computer, but did not request access at that time. Plaintiff was not on leave from the office at that time. *Id.* at 98-99. Shortly thereafter, Plaintiff was informed by anonymous letter received at her home that Ms. Heslep and Ms. Drake had made this inquiry. *Id.* at 91. Further, on March 8, 2010, Ms. Drake issued a proposed reprimand to Plaintiff alleging that Plaintiff delayed reviewing and sending out contracts and issuing other forms, and extended deadlines without the approval of her supervisor. *Id.* at 90. The proposed reprimand was submitted to Mr. Ferguson, who ultimately withdrew the proposed reprimand. *Id.* Finally, on July 6, 2010, as discussed *supra*, Agent Wilson sent a reply email to Plaintiff copying Ms. Heslep regarding the status of OIG's investigation with references in the email chain to the anonymous letter sent to Plaintiff. *Harrison III*, 985 F. Supp. 2d 13, 17-18 (D.D.C. 2013). These incidents form the basis of the Plaintiff's hostile work environment claim.

The Court did not and will not consider the following events cited by Plaintiff as evidence of a hostile work environment claim for the reasons described. Generally, the Court

---

between Ms. Heslep and Ms. Miller. *Id.* at 89-90. Further, as the Court noted in *Harrison II*, one of the questions left open in this matter due to Plaintiff's destruction of the recording device was whether Plaintiff was using the device for her psychotherapy as she alleges. *Id.* at 94.

did not consider incidents that it had already concluded no reasonable juror could find were motivated by a discriminatory or retaliatory animus. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998) ("Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimination* . . . because of . . . sex.'"); *Na'Im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009) ("Courts in this jurisdiction have routinely held that hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class."). The Court also did not consider incidents raised by Plaintiff only in her briefs and not in any of the complaints in the instant action or the earlier actions. *See Harrison II*, 964 F. Supp. 2d 81, 95 (D.D.C. 2013) (citing *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service*, 297 F.Supp.2d 165, 170 (D.D.C. 2003)) ("It is axiomatic that the Plaintiff cannot amend her Complaint by the briefs in support of or in opposition to a motion for summary judgment."). Finally, the Court did not consider actions taken by former employees after their employment with Defendant had ended. *See* 42 U.S.C. § 2000e-3 (providing that it is an unlawful employment practice for an *employer* to retaliate against an employee).

Specifically, the Court did not consider the following incidents for the reasons cited: (1) the August 6, 2008, incident (no evidence of discriminatory or retaliatory motive, *see Harrison I*, 964 F. Supp. 2d 71, 78, 80 (D.D.C. 2013)); (2) Mr. Hayleck's behavior toward the Plaintiff from August 23, 2008 until September 30, 2008 (no evidence of a retaliatory motive, *see id.* at 80); (3) the September 30, 2008, incident (no evidence of a retaliatory motive, *see id.*); (4) the processing of the Plaintiff's leave requests (no evidence of a retaliatory motive, *see id.*); (5) Plaintiff being

15

tasked with organizing files within close proximity to Mr. Hayleck's office on February 19, 2009 (no evidence of a retaliatory motive, *see id.*); (6) the search of Plaintiff's coat pocket (no evidence of a retaliatory motive, *see Harrison II*, 964 F. Supp. 2d 81, 101 (D.D.C. 2013)); (7) the issuance of the Performance Improvement Plan, that was never implemented (no evidence of a retaliatory motive, *see id.*); (8) the pornographic email sent to Plaintiff [REDACTED – OIG REPORT]; and (9) [REDACTED – OIG REPORT].

To establish a prima facie Title VII hostile work environment claim, the Plaintiff must show: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her protected status; and (4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment. *See Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122-23 (D.C. Cir. 2002); *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999). To prevail on a hostile work environment claim, Plaintiff "must first show that . . . she was subjected to 'discriminatory intimidation, ridicule, and insult' that [was] 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014).

In reaching its holding in the instant action, the Court found that a reasonable juror could not conclude "this string of sporadic events, spread out over time, and involving five separate supervisors and a different division of the Defendant" was sufficiently severe or pervasive such that it altered the conditions of the Plaintiff's employment and created an abusive working environment. *Harrison III*, 985 F. Supp. 2d at 22. The Court finds no reason to disturb this holding. Indeed, the cited incidents span the time period from February 19, 2009 through July 6, 2010, and involve actions taken by Mr. Hayleck, Ms. Tiscione, Mr. Cassil, Ms. Bailey, Ms.

Heslep, Ms. Drake, Agent Wilson, and the EEO/CP. *See Brooks*, 748 F.3d at 1276 (noting that the court must assess the timeline of events as a whole to determine whether the conduct was sufficiently severe or pervasive); *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("[A] a few isolated incidents of offensive conduct do not amount to actionable harassment."); *see also Blue v. Jackson*, 860 F. Supp. 2d 67, 76 (D.D.C. 2012) (finding that incidents spanned five years, multiple offices, and multiple supervisors did not form an actionable hostile work environment claim). Looking at the events in the aggregate, the Court finds that the cited conduct is not sufficiently severe or pervasive to support a viable hostile work environment claim.

### 2. Chief Administrative Officer David Ferguson as Link Between Incidents

The Court shall next address Plaintiff's argument that the cited events are linked together by a common thread, Chief Administrative Officer David Ferguson whom Plaintiff contends was either personally involved in the cited incidents or was the supervisor of many of the other employees involved in the various cited incidents.[11] Pl.'s Mot. at 2-4. The Court notes that Plaintiff failed to cite to the record in support of her argument regarding Mr. Ferguson, making it difficult for the Court in some instances to ascertain the specific incidents being discussed. *See* Pl.'s Mot. at 2-4. Plaintiff attempts to demonstrate a "systemic, non-sporadic hostile work environment," Pl.'s Mot. at 4, based on the "administrative network" of employees who "hurt"

---

[11] It appears that Plaintiff is attempting to establish that she was exposed to a systemic, non-sporadic hostile work environment based on CAO Ferguson's involvement in the incidents. Pl.'s Mot. at 3-5; Pl.'s Reply at 2. To the extent that Plaintiff may be attempting to argue that Defendant is vicariously liable for CAO Ferguson's misuse of supervisory authority, the Court has found that Plaintiff failed to demonstrate an actionable hostile work environment claim and, thus, the Court does not reach the issue of whether Defendant can be held vicariously liable for CAO Ferguson's alleged misuse of supervisory authority. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) ("An employer is subject to vicarious liability to a victimized employee for an *actionable* hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." (emphasis added)).

and/or failed to help her, Pl.'s Mot. at 2-3.[12] Plaintiff appears to argue that of the people on this list, Mr. Ferguson can be linked to many of the cited incidents.[13] Pl.'s Mot. 3-4. First, the Court shall address the incidents to which Plaintiff contends Mr. Ferguson was personally involved. Next, the Court shall address two events cited by Plaintiff but not addressed by the Court in *Harrison I*, *II*, or *III*. Finally, the Court shall address Plaintiff's argument regarding Mr. Ferguson's involvement by virtue of his supervisory role. Ultimately, the Court concludes that the Plaintiff's argument regarding Mr. Ferguson fails for the reasons described herein.

Plaintiff first notes that Mr. Ferguson was the recipient of the original email sent by Plaintiff that spurred the August 6, 2008, incident with Mr. Hayleck. Pl's Mot. at 3. The email sent by Plaintiff was not considered by the Court as part of Plaintiff's hostile work environment claim because Plaintiff herself precipitated the events considered in *Harrison I* with this email.

---

[12] Plaintiff argues that when she sought assistance, she was "hurt" by:

(a) Senior Executive Leadership, to include then Acting Architect Ayers who became Architect of the Capitol and Chief Administrative Officer David Ferguson, 'CAO;' and, Dan Cassil, at one time Deputy CAO and Acting Chief Human Capitol Officer, 'CHCO,' of the newly formed Capitol Human Management Division, 'HCMD;' (b) Employees of the Human Resources Management Division, 'HRMD,' to include Rebecca Tiscione, Director, HRMD; employees of the Workers' Compensation Program; employees of the Employee Relations Division; employees of the Training and Employee Development Division, 'TED;' (c) Employees of the then Equal Employment Opportunity/Conciliation Programs Office, 'EEO/CP,' to include Teresa Bailey, Director of the EEO/CP; (d) Teresa Bailey, Acting Deputy CHCO of the HCMD; (e) John Settle, Ombudsman; and, (f) Employees of the Office of the Inspector General, 'OIG.'

*Id.* at 2-3.

[13] Plaintiff does not appear to make this argument centering around CAO Ferguson in her opposition to Defendant's motion for summary judgment. The Court notes that Plaintiff makes only one reference to CAO Ferguson in that opposition, including him in a list of employees who denied Plaintiff assistance in resolving earlier issues but not highlighting in any way the argument made in her motion for reconsideration regarding his specific involvement in the cited incidents. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J., at 32, ECF No. [24].

However, the Court shall consider for the purposes of this analysis that Mr. Ferguson was the recipient of that email. To the extent Plaintiff now appears to argue that Mr. Ferguson retaliated against her in response to this email, the Court notes that this argument is not raised in any of the complaints filed in *Harrison I*, *II*, or *III*. Indeed, in *Harrison I*, Plaintiff provides very few details about the content of the email, simply stating: "Chief Hayleck was complaining about an e-mail respecting training to be provided [by] EEO Specialist Vennettia Vann that Plaintiff, pursuant to the order of Chief Hayleck, had sent to COA Ferguson." Pl.'s Opp. St. of Mat. Facts ¶ 2, Civ. No. 09-1364, ECF No. [43-1]. Further, Plaintiff makes no argument that the email constituted protected activity within the meaning of the CAA such that it could form the basis of a retaliation claim, nor has Plaintiff presented any evidence that she filed a request for counseling related to the training complained about in the email pursuant to the requirements of the CAA. *See* 2 U.S.C. § 1401 (describing the procedure for consideration of alleged violations of the CAA).

In relation to the events that the Court considered as part of Plaintiff's hostile work environment claim, Plaintiff only points to Mr. Ferguson's direct involvement in one of the incidents. Specifically, Mr. Ferguson withdrew the proposed reprimand of Plaintiff written by Ms. Drake, and instead cautioned Plaintiff that "future conduct of the type described in the proposal will be considered a serious departure from [her] obligation to adhere to the Standards of Conduct and will result in appropriate disciplinary action." *Harrison II*, 964 F. Supp. 2d 81, 90 (D.D.C. 2013).

In her motion, Plaintiff also alleges that Mr. Ferguson had direct involvement in two incidents not discussed by the Court in its opinions in *Harrison I*, *II*, or *III*, and not supported by the record. First, Plaintiff contends that "CAO Ferguson was first line supervisor to Jerry

Ciango; EAP Manager who was ordered by CAO Ferguson to abandon his assistance of Plaintiff." Pl.'s Mot. at 3. According to Plaintiff's Opposing Statement of Material Facts Not in Genuine Dispute in *Harrison I*, Civ. No. 09-1364, ECF No. [43-1], Plaintiff contacted Mr. Ciango, among others, after the August 6, 2008, incident with Mr. Hayleck, and Mr. Ciango told her to handle the situation at the lowest level possible. Pl.'s Opp. St. of Mat. Facts ¶¶ 7-8, Civ. No. 09-1364, ECF No. [43-1]. While Plaintiff indicates that she requested that Mr. Ciango attend meetings with her in regard to her claim, the Court is unable to locate anything within the statement of material facts that demonstrates Mr. Ciango was "ordered by CAO Ferguson to abandon his assistance of the Plaintiff." *See id.* ¶¶ 26-27, 32-33, 35, 38, 41, 43. In fact, it appears Mr. Ciango did assist Plaintiff with her claims. *See id.* Further, it appears that Mr. Ciango also assisted Plaintiff in regards to her claims in the instant action. *See* Compl. ¶¶ 34-36, 50, ECF No. [1]. Accordingly, the Court finds this assertion with regard to Mr. Ferguson is without merit.[14]

Next, Plaintiff asserts that "[Mr.] Ferguson had administrative oversight over John Settle, the Ombudsman who abandoned the Plaintiff's efforts to seek resolution of the difficulties arising from the assault on her person by her first line supervisor to the Plaintiff."[15] Pl.'s Mot. at

---

[14] The Court further notes that it shall not consider this argument as Plaintiff failed to cite to the record to support this claim with regards to Mr. Ferguson. *See* LCvR 7(h) (An opposition to a motion for summary judgment must include "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."); *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 136-37 (D.C. Cir. 2011) ("[O]ur district courts' Local Civil Rule 7(h) expressly authorizes courts to treat as forfeited evidence—including record evidence—that the parties fail to highlight at summary judgment . . . .").

[15] Plaintiff's reference to an assault refers to an incident described in *Harrison I*:

On August 6, 2008, the Plaintiff alleges that Mr. Hayleck approached the

20

4. Plaintiff appears to be referencing incidents discussed in her complaint filed in *Harrison I*. After Plaintiff lodged her complaint regarding the August 6, 2008, incident with Mr. Hayleck, she agreed to work with Mr. Settle to attempt to mediate the issue. Pl.'s Opp. St. of Mat. Facts ¶¶ 18-21, Civ. No. 09-1364, ECF No. [43-1]. Plaintiff communicated with Mr. Settle between August 27, 2008 and September 11, 2008, regarding her claim. *Id.* ¶¶ 29-40. During that time, Mr. Settle indicated that he had tried to contact Mr. Hayleck several times and had not received a response. *Id.* ¶¶ 36-37. On September 11, 2008, Mr. Settle emailed Plaintiff and indicated that he was meeting with Mr. Hayleck on September 15, 2008, and that hopefully the next step would be mediation. *Id.* ¶¶ 38-39. This was the last email that Plaintiff received from Mr. Settle. *Id.* ¶ 40. The Court includes this discussion to simply note that it appears apparent that Mr. Hayleck was uncooperative in the mediation process and that was the reason for the cessation of communication with Mr. Settle. Further, Plaintiff has demonstrated no link between Mr. Settle's failure to mediate her claim with Mr. Hayleck and Mr. Ferguson. Plaintiff simply states without more, the bald assertion that Mr. Ferguson had "administrative oversight" over Mr. Settle. Pl.'s Mot. at 4. Accordingly, the Court concludes that Plaintiff's allegation that Mr. Ferguson in any way influenced Mr. Ciango or Mr. Settle in order to stop them from assisting Plaintiff is without merit.

Plaintiff does not appear to argue that Mr. Ferguson had direct involvement in any of the other cited incidents considered by the Court in her hostile work environment claim. She simply

---

Plaintiff's desk and screamed at the Plaintiff while waiving [sic] a piece of paper in close proximity to the Plaintiff's face . . . . Mr. Hayleck was upset that the Plaintiff had sent an email to David Ferguson, the Plaintiffs third-line supervisor, regarding a "controversial training request."

*Harrison I*, 964 F. Supp. 2d 71, 74 (D.D.C. 2013) (internal citations omitted).

asserts that Mr. Ferguson was the supervisor of other employees involved in the actions considered by the Court. Plaintiff notes that Mr. Ferguson was the first-line supervisor to Ms. Tiscione, Mr. Ciango, and Ms. Bailey, and the second-line supervisor to Mr. Hayleck, Ms. Heslep, and Ms. Drake. Pl.'s Mot. at 3-4. Plaintiff does not allege that Mr. Ferguson had any supervisory authority over Agent Wilson. The Court finds that the fact that Mr. Ferguson was the first- or second-line supervisor to some of the employees involved in the cited incidents, without supporting evidence that he was involved in any way with those incidents, coupled with his withdrawal of a proposed reprimand of Plaintiff, simply is not sufficient to support reconsideration of the Court's finding that Plaintiff failed to make out an actionable hostile work environment claim. As the Court noted, Plaintiff only points to a string of sporadic events, spread out over time and involving five separate supervisors and a different division. Accordingly, the Court concludes Plaintiff has presented no basis for it to reconsider its holding that a reasonable juror could not conclude the purportedly offensive conduct was sufficiently severe or pervasive such that it altered the conditions of Plaintiff's employment and created an abusive working environment.

### C. *Arguments Raised in Plaintiff's Reply*

Finally, Plaintiff attempts to raise new arguments in her reply that have not been raised in her initial motion for reconsideration. Further, Plaintiff seeks to incorporate these new arguments by simply referencing arguments made in Plaintiff's reply briefs in support of her Motions for Reconsideration in *Harrison I*, Civ. No. 09-1364, ECF No. [54], and in *Harrison II*, Civ. No. 10-1480, ECF No. [75]. *See* Pl.'s Reply at 1 ("Plaintiff incorporates by reference and makes a part hereof as if fully set forth herein the contents of Section I and Section II of her Reply to Defendant's Opposition to Plaintiff's Motion for Reconsideration in Civil Action No.

1:09-cv-001364(CKK), '*Harrison I*' respecting 'workplace mobbing,' 'workplace bullying,' and 'totality of circumstances' and 'exclusion of the medical evidence;' respectively; and Section I of Civil Action No. 1:10-cv-001480(CKK), '*Harrison II*' respecting the 'Court's rejection of the Plaintiff's medical evidence and the adverse inference respecting the destruction of the Plaintiff's recording device in the absence of Plaintiff's medical evidence and the references to 'mobbing behavior' contained in the charts appearing on pages 36, 37 and 41 in *Emotion Abuse in the American Workplace,* Davenport, Ph.D., Schwartz and Pursell Elliott, Civil Society Publishing, (2002), '*Davenport*.'").  The arguments Plaintiff raises for the first time in her reply are forfeited because it leaves Defendant with no opportunity to respond.  *See, e.g., McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to [a defendant], but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." (citation omitted)); *Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 22 (D.D.C. 2013), *aff'd* 699 F.3d 538 (D.C. Cir. 2012) (forfeiting an argument made for the first time in a reply brief); *see also Jones v. Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008) (holding that D.C. precedent consistently submits that courts should not address arguments raised for the first time in a party's reply). Further, the Court shall not readdress these arguments, which are discussed in full in the Court's rulings on Plaintiff's Motions for Reconsideration entered in *Harrison I* and *II*.  *See Harrison I*, Civ. No. 09-1364, ECF No. [56]; *Harrison II*, Civ. No. 10-1480, ECF No. [77].

## IV. CONCLUSION

For the reasons outlined above, the Court DENIES Plaintiff's [31] Motion for Reconsideration.  The Court further INCORPORATES as part of this opinion its reasoning as laid out in its [30] Memorandum Opinion, *see* 985 F. Supp. 2d 13 (D.D.C. 2013).  This case

remains dismissed.  An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE